# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANTARES MARITIME PTE LTD.**                    CIVIL ACTION

**VERSUS**                                       NO:    18-12145

**BOARD OF COMMISSIONERS OF THE**                SECTION: "D" (4)
**PORT OF NEW ORLEANS, ET AL.**

## ORDER

Before the Court is **Antares Maritime's Motion to Quash or Limit 30(B)(6) Deposition (R. Doc. 74)** seeking an order stipulating that the deposition of Plaintiff Antares Maritime Pte Ltd. ("Antares") pursuant to Federal Rule of Civil Procedure 30(b)(6) be conducted by videoconference rather than requiring in-person attendance. Defendants the Board of Commissioners of the Port of New Orleans ("Dock Board") oppose this motion. R. Doc. 77. This motion was set for submission on November 4, 2020 and was heard on the briefs.

### I.    Background

On December 3, 2018, Plaintiff Antares filed this action after a vessel it owns allided with a stationary dock at the Port of New Orleans. R. Doc. 1. Antares is a Singaporean subsidiary of international shipping conglomerate PACC. *Id.* Antares alleges that on April 12, 2018, as it attempted to approach the assigned berthing position directed by the Port of New Orleans, a piece of steel plating protruding from the wharf came into contact with the vessel's starboard hull. *Id.*

The Dock Board maintains that a basic tenant of maritime law is that the vessel, in this case the one owned by Antares, which strikes a fixed object is at fault. R. Doc. 77, p. 2. The Dock Board also contends that the vessel came into the wharf at an abnormal angle, inappropriately high rate of speed, and without the benefit of certain navigational equipment which caused the vessel to hit the wharf at unusual force causing the puncture in the vessel's fuel tank. *Id.*

As to this instant motion, Antares seeks an order stipulating that its corporate witness(es) be deposed by means of videoconference in order to avoid the substantial burden and health risks of traveling to New Orleans from Singapore during the ongoing Covid-19 pandemic. R. Doc. 74.

Defendant the Dock Board request (1) the Court order Antares to sit for its deposition in New Orleans, (2) allow parties to push the November 20, 2020 deadline to await for the loosening of travel restrictions, or (3), if the Court orders the deposition by videoconference, that the Court set forth the parameters for the deposition in the interests of fairness to all parties involved. R. Doc. 77.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 30 governs depositions by oral examination. Fed. R. Civ. Pro. 30. Among other things, Rule 30 provides "[t]he parties may stipulate--or the court may on motion order—that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1)." Fed. R. Civ. P. 30 (a)(4).

"The party seeking to take depositions by video-teleconferencing must establish a legitimate reason for its motion." *Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2008) (citations omitted). "Any party opposing such depositions has the burden to establish good cause as to why they should not be conducted in such manner." *Brown v. Carr*, 236 F.R.D. 311, 312 (S.D. Tex. 2006). "Generally, leave to take depositions by remote electronic means should be granted liberally." *Brown*, 253 F.R.D. at 412 (citing *Jahr v. IU Int'l Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986) (addressing telephonic depositions) and *Robertson v. Vandt*, No. 1:03–cv–6070, 2007 WL 404896 (E.D.Cal. 2007) (granting request for a deposition by video-teleconference) (unpublished)).

### III.  <u>Analysis</u>

Antares contends that Singapore requires that any Singapore residents (which would include the Antares corporate representatives) that travel to the United States quarantine for 14 days at a dedicated government facility, not the individual's residence, and undergo a Covid-19 test before the end of their quarantine. R. Doc. 74-1, p. 3. Antares further contends requiring the corporate representatives to travel around the world would place an extraordinary burden on them and increase their health risks, all of which is wholly unnecessary given the ready availability of videoconference technology to conduct the deposition. R. Doc. 74-1, p. 4. Antares also contends it will be required to designate multiple representatives to appropriately respond to the noticed topics, exposing more people to risk without good cause. R. Doc. 74-1, p. 5.

Defendants Dock Board contend that the Plaintiff should be required to sit for a deposition in its chosen forum. R. Doc. 77, p. 3. The Dock Board also argues that in-person attendance should be required in New Orleans because current travel restrictions in Singapore preclude the taking of the corporate depositions in Singapore. R. Doc. 77, p. 5. The Dock Board also contends that this deposition will be document intensive, which would render the video-deposition ineffective and impractical. *Id.* The Dock Board also argues that logistically there will be struggle in scheduling the deposition where New Orleans and Singapore have a thirteen (13) hour time difference. R. Doc. 77, p. 6. Finally, the Dock Board argues that there will be difficulty communicating and assessing the credibility of the witness if the deposition is allowed to proceed via video where the corporate deponents are non-English speakers. *Id.*

The Dock Board argues, however, should the deposition be allowed to proceed via remote means, that there be certain protocols by the Court in place to ensure the fairness. *Id.*; R. Doc. 77,

p. 10. For example, Dock Board seeks an order precluding PACC Lines in-house counsel from attending the deposition in-person and require that all parties attend via remote means. *Id.*

Dock Board also suggests, in the alternative, that the Court wait until travel restriction are lifted in Singapore to allow for in-person attendance. R. Doc. 77, p. 9.

Courts across the country have recognized that the COVID-19 pandemic is requiring attorneys and litigants all to adapt "to a new way of practicing law, including conducting depositions and deposition preparation remotely." *Grano v. Sodexo Mgmt., Inc.*, No. 18CV1818-GPC(BLM), 2020 WL 1975057, at *3 (S.D. Cal. Apr. 24, 2020); *see also In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020) (finding unless the Court is going to stay all depositions, which it was unwilling to do on a blanket basis, "the parties and their counsel are going to have to ~~have to~~ adapt, make some choices, be creative, and compromise in this and every other case in which they are involved during this time without modern precedent" until such time as there is a cure a vaccine for COVID-19, or something approaching so-called herd immunity).

Even this Court has recognized:

> [T]he entire world is in the midst of a pandemic. The President of the United States, Governor of the State of Louisiana, and the Mayor of the City of New Orleans have declared a public health emergency throughout the country, State, and the City, respectively in response to the spread of COVID-19. State and local governments around the country, including in New Orleans, have issued regulations and recommendations to encourage social distancing as a means of limiting further community spread of the disease. Courts around the country, including our own, have modified procedures to try and combat the spread of COVID-19 while continuing to operate.

*SAPS, LLC v. EZCare Clinic, Inc.*, No. CV 19-11229, 2020 WL 1923146, at *2 (E.D. La. Apr. 21, 2020) (citing Amended General Order No. 20-5, (E.D. La. Apr. 3, 2020) (closing the courthouse to the general public); General Order No. 20-4 (E.D. La. Mar. 30, 2020) (implementing rules for

the use of video and telephone conferencing for various criminal proceedings); General Order No. 20-2 (E.D. La. Mar. 16, 2020) (continuing all trials until May 1, 2020)).

In understanding how the disease is transmitted through social contact "[a] video deposition and remote preparation for [deponents] may be much safer and allow for more flexibility than in-person sessions." *In re Broiler Chicken*, 2020 WL 3469166, at *2 (noting even as stay-at-home orders have been relaxed or suspended that many lawyers continue to work from home, and, despite these difficulties, accommodation is the answer rather than a complete cessation of discovery activity until the COVID-19 pandemic abates).

Moreover, "[a]s it is unknown how long the COVID-19 crisis will impact depositions and other in person meetings, it is likely that future noticed depositions for other parties' witnesses also will be conducted by remote technology." *Grano*, 2020 WL 1975057, at *3. In fact, courts have recognized the "hope the physical distancing and stay-at-home orders required by the current pandemic will be lessened to allow for in-person depositions in the near future" as "pure speculation." *In re Broiler Chicken*, 2020 WL 3469166, at *8 (noting director of the National Institute of Allergy and Infectious Diseases Dr. Fauci's belief a second wave of coronavirus infections is "inevitable" and has arrived noting that "the worst-case scenario...involves a second, larger wave of infections this fall and winter) (citing *United States for use & benefit of Chen v. K.O.O. Constr., Inc.*, No. 19CV1535-JAH-LL, 2020 WL 2631444, at *1 (S.D. Cal. May 8, 2020)).

Courts have, therefore, issued  orders "to protect public health while promoting the 'just, speedy, and inexpensive determination of every action and proceeding,'" requiring depositions be taken "via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means." *Sinceno v. Riverside Church in City of New York*, No. 18-CV-2156 (LJL), 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020).  Notwithstanding, this Court recognizes

that there are problems inherent in conducting a deposition remotely. *See United States ex rel. Chen*, 2020 WL 2631444, at *2 ("While the Court is sympathetic to the challenges to the legal community during this pandemic, attorneys and litigants are adapting to new ways to practice law, including preparing for and conducting depositions remotely.").

For example, of these potential problems, the Court can see the possibility for technological complications. *See, e.g., In re Broiler Chicken*, 2020 WL 3469166, at *4 ("There are many opportunities for glitches (e.g., a frozen screen with the dreaded message 'your internet connection is unstable') that can frustrate even the most technologically savvy lawyer taking or defending a remote deposition"). While, "[t]echnological problems can arise during in-person as well as remote depositions, [] that is not a reason to prevent remote depositions from occurring. It can be difficult and frustrating in both contexts to accommodate technological problems, but the depositions still proceed." *Id.* Moreover, as other courts have recognized "[t]here are numerous resources and training opportunities available throughout the legal community to assist [] counsel in the operation and utilization of the new technology." *Grano*, 2020 WL 1975057, at *3

In addition, the Court also recognizes the inherent difficulty in preparing a deponent without in-person interaction. Notwithstanding, "[w]hile it may be more difficult for a lawyer to prepare a witness for a deposition without sitting in the same room with her or him, it is not impossible to do so." *In re Broiler Chicken*, 2020 WL 3469166, at *4 (noting Defendants and their counsel can choose how they want to prepare witnesses for depositions and whether or not they want to be with the witness in person when the witness gives a deposition by remote means). A deponent can be well-prepared to give deposition testimony, even in a deposition that "may involve a large number of documents and a relevant time period of many years, without being in the same room with her or his counsel." *Id.*; *see also United States ex rel. Chen*, 2020 WL 2631444, at *2

("The Court is not convinced that voluminous and highly detailed exhibits are a bar to remote videoconference depositions . . . [where] exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently.").

The Court is, therefore, of the opinion that "[i]f the witness and counsel have the same universe of documents in front of them, either in hard or electronic copy, those documents are identifiable by a Bates number or other unique identifier, and they utilize a video system that allows them to see each other and even to see a document together on their computer screens at the same time, the preparation session(s) should proceed without too much trouble even if the process takes a bit longer than in person." *In re Broiler Chicken*, 2020 WL 3469166, at *4; *see also Woodward v. Lopinto, et al* (2:18-cv-04236-MVL-KWR), October 26, 2020 Minute Entry and Order (R. Doc. 115) ("Given the current state of the world, document intensity alone is not in itself enough to require in-person attendance at a deposition[.]").

Moreover, while the Court recognizes that many of the cases cited by the Defendant Dock Board stand for the proposition that a deposition should occur in plaintiff's chosen forum or in-person attendance at depositions is preferable to attending a deposition by remote means, none of those decisions were decided whilst the world was in the midst of a global pandemic. *See, e.g.*, *Leamon v. KBR, Inc.*, No. CV H-10-253, 2011 WL 13340583, at *1 (S.D. Tex. Nov. 1, 2011). Given the current state of the world, the Court is of the opinion that the general rule that the deposition occur in plaintiff's chosen forum must give way in light of the health and safety risks posed to all involved.

As such, this Court, along with so many others, finds that the health concerns created by the COVID-19 pandemic constitutes "good cause" for the entry of an order requiring that the

deposition take place by remote videoconference under the circumstances in this case. *See Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, No. 19-CV-00660, 2020 WL 3250723, at *3 (N.D. Ill. June 16, 2020); *In re RFC and ResCap Liquidating Trust Action*, 2020 WL 1280931, at *3 (D. Minn. Mar. 10, 2020) (finding that "COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote [trial] testimony"); *Townhouse Rest. of Oviedo, Inc. v. NUCO2, LLC*, No. 19-14085-CIV, 2020 WL 3316021, at *1 (S.D. Fla. May 5, 2020) (finding good cause established to conduct remote deposition where, while one counsel may be willing to travel to different states to conduct the depositions, that witnesses and other attorneys involved may still prefer to limit exposure to others, particularly those who have traveled across state lines, in light of the CDC's recommendations that people stay at home as much as possible, especially if the trip (or travel outside the local area) is not essential). Accordingly, "[t]his Court will not require parties to appear in person with one another in the midst of the present pandemic." *SAPS*, 2020 WL 1923146, at *2.

Moreover, given that this Pandemic has required global, national, and local governments to implement travel and quarantine restrictions for the past nine months; no vaccination has been released; no cure discovered; and that there is no clear end in sight, the Court is reluctant to wait for an indefinite amount of time until travel restrictions are loosened and the world returns to a state of normalcy.

Notwithstanding, as "[t]his Court appreciates the concerns expressed by [] counsel about the challenges he has experienced conducting remote depositions," *see, e.g., Townhouse*, 2020 WL 3316021, at *1, this Court will implement a protocol with the following rules to apply to the remote video conference deposition:

1. The applicable Federal Rules of Civil Procedure and Eastern District of Louisiana Local Rules shall be followed at all times.

2. The court reporter for the deposition conducted via video conference shall administer the oath or affirmation to the deponent remotely and transcribe the deposition testimony remotely.

3. No other attendees other than the parties to the subject lawsuit, their representative counsel, and counsel for the witness, shall be allowed to participate in the video conference deposition without prior consent of all counsel. This includes appearing individually within the video conference platform and/or being present within the room where the attendee is viewing the videoconference deposition.

4. No participant in the deposition may utilize the "chat" function (or similar private communication function) of the video-conference platform, except to facilitate the sharing of documents during the deposition. In no event shall the "chat" function be used for any counsel to communicate directly with the witness.

5. At no time during the deposition shall any counsel text, message, email, or transmit any messages to the witness(es) in order to help respond to any and all questions.

6. Before the witness is sworn, all cellphones shall be placed in the silent mode. All parties and counsel will disable notifications on their devices to avoid disruption of the audio and video stream during the deposition.

7. The witness and all counsel or parties appearing on the record shall state their appearances clearly for the record, and they shall not disable their cameras during the deposition unless there is a break.

8. All documents or other exhibits, except those to be used for impeachment, shall be shared with all counsel no later than ten (10) days prior to the deposition and said documents shall be bate-stamped, marked as exhibits, or both. No later than five (5) business days prior to the deposition all documents shall be provided to the court reporting service. Those documents or other exhibits used for impeachment must be shared with all participants when introduced on the record via the share screen, or similar feature on the platform and attached as an exhibit to the deposition.

*See Ross v. Dejarnetti* (2:18-cv-11277-NJB-KWR), July 8, 2020 Minute Entry and Order (R. Doc. 64). Counsel are required to become proficient in the use of the Zoom platform in advance of the deposition.

Turning next to the issue raised by the Dock Board on the inherent unfairness in allowing certain counsel to be present at Antares' corporate deposition, the Court is of the opinion that Plaintiff Antares has the right to representation. *See, e.g., Redmond v. Poseidon Pers. Servs., S.A.*, No. CIV.A. 09-2671, 2009 WL 3486385, at *3 (Fallon, D.J.) (E.D. La. Oct. 23, 2009) (finding Magistrate Judge's decision prohibiting corporate counsel from being physical present at the videoconference corporate deposition of its client in Europe clearly erroneous as corporation had a right to have its counsel present at the 30(b)(6) deposition) ("Denying [the corporation] the opportunity to have its attorney present during the Rule 30(b)(6) deposition would inhibit defense counsels' duty to effectively and competently represent their foreign clients"). Thus, should Antares elect to have their in-house counsel physical present during the taking of the deposition, this Court will not prevent their attendance. In an effort to promote fairness, however, the Court will require that, should Antares' local counsel opt to be present at the corporate deposition, that they participate by separate video means to ensure that they are within the screen and visible to

opposing counsel. The Court also reminds the lawyers that they should be mindful of all the COVID-19 protocols.

Furthermore, while the Court recognizes that there should be some problems in fixing a time for the deposition to occur given the deponents and counsel are half a world apart, the Court is of the opinion that parties can resolve this issue amongst themselves and arrange for the deposition to occur in affixed time periods to span across multiple days if need be. Given the time difference, and only if the parties agree, the deposition may be split into two (2) three-and-a-half hour sessions on two days. This is only a proposal to mitigate the risk of problems.

## IV.   <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the **Antares Maritime's Motion to Quash or Limit 30(B)(6) Deposition (R. Doc. 74)** is **GRANTED** to the extent that the 30(b)(6) depositions shall occur by remote means via a videoconference application.

New Orleans, Louisiana, this 30<u>th</u> day of November 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**