## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ANTARES MARITIME PTE, LTD.**                **CIVIL ACTION**

**VERSUS**                                    **NO. 18-12145**

**BOARD OF COMMISSIONERS FOR**               **SECTION D (4)**
**THE PORT OF NEW ORLEANS, ET AL.**

### ORDER

Before the Court is Defendant Ports America Louisiana LLC's Motion for Summary Judgment.[1]  The Motion is opposed,[2] and Defendant has filed a Reply.[3] After careful review of the parties' memoranda, the record, and the applicable law, the Court denies the Motion.

### I.    FACTUAL BACKGROUND

This case arises from a shipping accident.  Defendant Ports America Louisiana, LLC ("Ports America") is a stevedore which leases certain property at the Port of New Orleans, which is operated by Defendant the Board of Commissioners of the Port of New Orleans (the "Board").  The lease agreement convers certain areas of the Port but does not include the actual wharf and specifically does not include the area where the allision occurred.[4]

The M/V PAC ANTARES, which is owned by Plaintiff Antares Maritime PTE, LTD ("Antares"), was set to berth at the Port of New Orleans on April 12, 2018.  As

---

[1] R. Doc. 78.
[2] R. Doc. 80.
[3] R. Doc. 95.
[4] *See* R. Doc. 78-3 at 31-68.

explained by Joshua Gommell, the Board's marine terminal superintendent, the Board is responsible for assigning berthing locations, and generally coordinates with stevedores such as Ports America to determine where to assign a vessel to berth.[5] The Board followed that procedure in this case, and coordinated with Mike Gleason, Ports America's general superintendent, on a location for the berthing of the M/V PAC ANTARES.[6]   Mike Gleason confirmed this was the case in his deposition.[7] Gleason testified that he received an email from the Board "asking where we would like the vessel" and he replied "please put it in Nashville B5 up."[8] On April 6, 2018, Patrick Noble of the Board sent an email, copying Gleason, entitled "PAC ANTARES Berthing Sections" which stated "Please place subject vessel in Nashville A 102-open & Nashville B 1-5," the same berthing area which had been requested by Ports America.[9] Gleason of Ports America further testified that this sort of communication was common between Ports America and the Board and the Board would try to accommodate Ports America's requests for specific berth assignments.[10]

On April 12, 2018, the M/V PAC ANTARES arrived at the Port of New Orleans.[11] Ports America had contracted with PACC Container Line Pte. Ltd., the time charterer of the PAC ANTARES, to provide stevedore services for the PAC ANTARES.[12]   When the PAC ANTARES went to dock at the Port at Nashville

---

[5] *See* R. Doc. 80-7 at 3-7.
[6] *Id*. at 7-11.
[7] *See* R. Doc. 80-6 at 3-8.
[8] *Id*.
[9] R. Doc. 80-5.
[10] R. Doc. 80-6 at 4.
[11] *See* R. Doc. 1 at 2-3 ¶ 10.
[12] R. Doc. 80-14 (Contract).

Avenue, it was allegedly damaged by a  ro-ro plate which punctured a fuel tank.[13] Plaintiff later sued Ports America and the Board for damages arising from the incident.[14]

On March 28, 2018, only about two weeks before the PAC ANTARES allision, the M/V TORENIA had a similar allision while berthing at essentially the same location.[15]  That vessel, too, was damaged by the steel ro-ro plates.[16]  On April 2, 2018, the TORENIA sent a Letter of Protest to Ports America, which stated that "the berth has insufficient and dilapidated wooden fenders and protruding steel plate without fender near the corner of the steel plate where the ship's hull touched."[17]  It continued: "Vessel hit the corner bare steel wharf that case the dent on the outside of the shell plate (hull)."[18]  Ports America promptly notified the Board.[19]

Ports America now moves for summary judgment.[20]  It argues that the uncontroverted facts establish that Ports America has no control over or responsibility for the location where the vessel berthed.  It further argues that it has no responsibility to maintain or repair the Nashville Avenue Wharf, as the Wharf was outside of the Ports America lease.  Finally, Ports America contends that it did not determine the berthing location of the M/V PAC ANTARES, as the Board is ultimately responsible for choosing the berthing location.

---

[13] *See* R. Doc. 80-19 (Inspection Report), R. Doc. 80-11 at 8 (Cabal Deposition); R. Doc. 80-6 at 2 (Gleason Deposition).
[14] *See* R. Doc. 1.
[15] R. Doc. 80-10 (Vessel Berth History); R. Doc. 80-11 at 9 (Cabal Deposition).
[16] R. Doc. 80-3.
[17] *Id*.
[18] *Id*.
[19] R. Doc. 89-1 at 3-5.
[20] R. Doc. 78.

Antares opposes the Motion.[21]  It argues that its claims against Ports America arise under general maritime negligence law, and that Ports America owed a duty to Antares under general maritime law because Antares's harm was foreseeable. Specifically, Antares argues that because Ports America selected a location to berth that it knew was dangerous, especially in light of the allision which occurred weeks earlier, but also because of Ports America's previously commissioned studies of adjacent wharfs which identified significant issues with the condition of the wharfs, Antares breached its duty to Antares and cause its harm.  Antares further argues that Ports America owed a wharfinger's duty to Antares, which it similarly breached. Finally, Antares argues that Ports America and Antares were in privity of contract, and that contract required Ports America to provide Antares with a berthing location.

In its Reply,[22] Ports America argues that it had no duty under general maritime law or the law related to Wharfinger's duty because Ports America did not control or lease the area where the allision occurred.  Ports America further argues that it satisfies any duty it owed to Antares by alerting the Dock Board of the allegedly hazardous condition weeks before the allision when it received the protest letter from the M/V TORENIA.

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of

---

[21] R. Doc. 80.
[22] R. Doc. 95.

law.[23]   When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[24]   While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[25]   Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[26]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[27]   The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[28]   If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving

[23] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[25] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[26] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[27] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[28] *Id.* at 1265.

party's claim.[29]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[30]

## III.   ANALYSIS

Antares asserts a claim of negligence under general maritime law. "'[N]egligence is an actionable wrong under general maritime law," and the elements of that tort are "essentially the same as land-based negligence under the common law.'"[31]  "To state a claim for relief under maritime law, the 'plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury."[32]  Of these factors, the primary factor disputed in the instant Motion for Summary Judgment is that of duty. "Determination of the tortfeasor's duty is a question of law and thus a function of the court."[33]  "The determination of whether a party owes a duty to another depends on

---

[29] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[30] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[31] *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candles, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)).

[32] *Id.* (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)).

[33] *Miss. Dep't of Transp. V. Signal Int'l LLC*, 579 F.3d 478, 490 (5th Cir. 2009).  The Court notes that Antares cites to an unpublished Fifth Circuit case that states that foreseeability, upon which duty is based, is a question of fact.  *See Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 F. App'x 281, 284 (5th Cir. 2015).  That case cited in a footnote to a criminal matter, which discussed foreseeability in an entirely different context—that of criminal sentencing.  *See United States v. Rodriguez*, 553 F.3d 380, 395 (5th Cir. 2008).  In any event, the Court does not find that either case dictates that duty is a question of fact in light of the overwhelming Fifth Circuit precedent clarifying that it is a question of law.  *See e.g., Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *Florida Fuels, Inc. v. Citogo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993).

a variety of factors, 'most notably the foreseeability of the harm suffered by the complaining party.'"[34]

The Court finds there are sufficient facts to demonstrate a duty on the part of Ports America so as to preclude summary judgment.[35]  After receiving notice of the M/V TORENIA allision, Ports America was undoubtably aware of the hazardous condition at the same location it chose to request for berthing the PAC ANTARES.[36] The potential danger to the PAC ANTARES was therefore clearly foreseeable to Ports America, yet it still had a hand in choosing the Nashville Avenue berthing location without any warning to the PAC ANTARES.[37]  Ports America stresses that the ultimate decision for berth decisions rests with the Board, however, the testimony from Ports America confirms that Ports America requests the berth location and the Board generally tries to accommodate that request.[38]  General maritime negligence includes the concept of a duty to warn where harm is reasonably foreseeable.[39]

Ports America resists this conclusion in a number of ways.  First, it emphasizes that it did not own or control the berthing location at Nashville Avenue.  But this argument ignores that Ports America selected the location for the PAC ANTARES to

---

[34] *Canal Barge Co.*, 220 F.3d at 377 (citing *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)).

[35] The Court notes that this determination is based solely on the facts before it at this time.  Because the parties may present a more complete set of facts that could alter this analysis at trial, this determination could be different at the conclusion of trial.

[36] R. Doc. 80-10 (Vessel Berth History); R. Doc. 80-11 at 9 (Cabal Deposition); R. Doc. 80-3 (Letter of Protest).

[37] *See* R. Doc. 80-5 (email entitled "PAC ANTARES Berthing Sections" selecting Nashville A 102-open & Nashville B 1-5, copying Mike Gleason); R. Doc. 80-6 at 4-8 (Gleason deposition clarifying that Ports America requested the Berthing location and the Board accommodated them).

[38] *See* R. Doc. 80-6 at 4-8 (Gleason deposition clarifying that Ports America requested the Berthing location and the Board accommodated them).

[39] *See, e.g.*, *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980).

berth at despite knowing of a dangerous hazard at that location.[40]   Perhaps anticipating this reasoning, Ports America next stresses that the Board—not Ports America—makes the final decision about berthing locations.[41]   Although this may be true, this argument similarly ignores the fact that Ports America requested the Nashville Avenue location to the Board, which generally attempts to accommodate Ports America's requests for berthing locations.   Ports America therefore had involvement in the selection of the berthing location it knew to be hazardous.   Finally, Ports America highlights that it promptly notified the Board of the TORENIA allision, essentially arguing that it fulfilled any duty it had to Plaintiff by doing so. While the Board may shoulder the weight of responsibility for the PAC ANTARES allision, the fact that Ports America notified the Board does not absolve Ports America's duty to Antares Marine.   Specifically, there is no evidence in the record that Ports America (which knew of the hazard), attempted to ascertain that the Board had fixed the ro-ro plates before requesting the Nashville Avenue location for the PAC ANTARES to berth.   Nor is there any evidence that Ports America attempted to warn the PAC ANTARES of a known hazard in the berthing location.   Accordingly, the Court rejects Ports America's arguments that it lacked a duty to Antares Marine.

---

[40] See R. Doc. 80-5 (email entitled "PAC ANTARES Berthing Sections" selecting Nashville A 102-open & Nashville B 1-5, copying Mike Gleason); R. Doc. 80-6 at 4-8 (Gleason deposition clarifying that Ports America requested the Berthing location and the Board accommodated them).

[41] See R. Doc. 80-5 (email entitled "PAC ANTARES Berthing Sections" selecting Nashville A 102-open & Nashville B 1-5, copying Mike Gleason); R. Doc. 80-6 at 4-8 (Gleason deposition clarifying that Ports America requested the Berthing location and the Board accommodated them); see also R. Doc. 80-7 at 3-13 (Gleason deposition explaining procedures by which the Board selects a berthing location).

Because the Court does finds that there are sufficient facts to demonstrate a duty under general maritime law, the Court does not reach Antares Marine's argument regarding whether Ports America separately owed a Wharfinger's duty.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that that Defendant's Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, January 28, 2021.

_____

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**